**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

HELL'S BAY BOATWORKS, LLC.

       Debtor.

_____/

HELL'S BAY BOATWORKS, LLC,

       Plaintiff,

vs.

RIVERSIDE NATIONAL BANK OF
FLORIDA, *et al.*,

       Defendants.

_____/

Case No. 6:05-bk-17567-ABB
Chapter 7

# FILED

**MAR 0 1 2006**

CLERK, U.S. BANKRUPTCY
ORLANDO DIVISION

Adv. Pro. No. 6:05-ap-00333-ABB

## MEMORANDUM OPINION

       This adversary proceeding came before the Court on the Complaint[1] filed by Hell's Bay Boatworks. LLC, the Debtor and Plaintiff herein ("Debtor"), against Riverside National Bank of Florida, ("Riverside"), Hell's Bay Boatworks Co. ("HBBC"), JRL Ventures, Inc., d/b/a Marine Concepts ("JRL"), Altec Capital Services, LLC ("Altec"), and David Cook ("Cook"). This is an action to determine the avoidability of a security interest pursuant to 11 U.S.C. § 544. Riverside filed, in response to the Complaint, a motion for summary judgment with two supplements.[2] The Debtor filed an opposing motion for summary judgment.[3] A trial was held on December 28, 2005. Appearing at trial were counsel for Riverside and counsel for the Debtor. The parties

---

[1] Adv. Pro. Doc. No. 1.
[2] Adv. Pro. Doc. Nos. 9, 10, 14, and 17.
[3] Adv. Pro. Doc. No. 18.

were provided an opportunity to file additional pleadings and to amend any filed pleadings. An evidentiary hearing was held on February 16, 2006 on the Debtor's and Riverside's competing motions for summary judgment. After reviewing the pleadings, evidence, hearing live testimony, argument, and being otherwise fully advised in the premises, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

The Debtor is a limited liability company formed under the laws of Alabama and specializes in the manufacture of custom fishing boats. Its business operations are located in Titusville, Brevard County, Florida and the Debtor owns the real property on which its business is located. The Debtor's name "Hell's Bay Boatworks" is well-known throughout the boating and fishing world and carries value. J. Bryan Broderick is the Debtor's managing member holding a 60% ownership interest in the Debtor.[4] The Debtor is no longer operating.

### *The Riverside Loan and Security Interest*

The Debtor purchased its business from HBBC in 2002. Riverside provided the primary financing for the purchase. The loan is documented through various agreements and financing statements signed by the Debtor and Mr. Broderick on August 7, 2002 including: (i) Equipment Promissory Note in the principal amount of $1,725,000; (ii) Real Estate Promissory Note in the principal amount of $680,000; (iii) Working Capital Promissory Note in the principal amount of $350,000; (iv) Mortgage and Security Agreement; (v) Collateral Assignment of Leases, Rents and Profits; (vi) Security Agreement; (vii) Assignment of Life Insurance Policy as Collateral; (viii) Stock Assignment relating to Mr. Broderick's interest in No Boundaries Network, Inc.; (ix) Cross-Collateral and Cross-Default Agreement; (x) Loan Agreement; (xi) Guaranty, executed by Mr. Broderick; and (xii) UCC-1 Financing Statement.

---

[4] Main Case Doc. No. 26.

The Debtor pledged all, or virtually all, of its assets as collateral for Riverside's loan including: (i) the real property in Brevard County; (ii) all rents and profits generated from the real property; (iii) all accounts receivable and related rights to payment, inventory and work in progress, and related intangibles (referred to by the parties as "Cash Collateral"); (iv) patents, trademarks, and intellectual property utilized in the Debtor's business; (v) machinery, equipment, furniture, and fixtures; (vi) boat molds, drawings, plans, contract rights, and other proprietary documents; (vii) stock of No Boundaries Network, Inc.; and (viii) a life insurance policy issued by The Cincinnati Life Insurance Company. The stock of No Boundaries Network, Inc. and the life insurance policy are not property of the bankruptcy estate. All other collateral is property of the bankruptcy estate.

Riverside obtained a non-possessory security interest in the collateral by virtue of the above-referenced documents executed by Riverside and the Debtor. The Mortgage and Security Agreement was recorded in the Public Records for Brevard County, Florida on August 12, 2002. The Collateral Assignment of Leases, Rents and Profits was recorded in the Public Records for Brevard County, Florida on August 12, 2002. Riverside filed a UCC-1 in Brevard County, Florida on August 12, 2002. Schedule A attached to the UCC-1 lists all, or virtually all, of the Debtor's assets, including real and personal property, as collateral for Riverside's loan.

The Debtor defaulted on the Riverside loan on or about January 1, 2005 causing Riverside to institute a state court foreclosure action in Brevard County, Florida. The Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida entered a Summary Final Judgment in favor of Riverside (the "Judgment") on August 1, 2005.[5] The Judgment is a final, non-appealable order. The parties had a reasonable opportunity to litigate all issues relating to the Riverside loan and its security interest in the state court foreclosure proceeding.

---

[5] Tab 7 to Riverside's Memorandum of Law in Support of Motion for Summary Judgment (Adv. Pro. Doc. No. 10).

3

Two portions of the Judgment make reference to lien rights. First, Paragraph 1(e) "adjudged" that

> Plaintiff [Riverside] perfected the security interest reflected in the aforesaid Mortgage, Assignment, Security Agreement, Life Insurance Assignment and Hypothecation Agreement by filing a UCC-1 with the Florida Secretary of State on August 12, 2002, and by recording a UCC-1 on the Public Records of Brevard County, Florida, at OR Book 4655, Page 3440, copies of which are attached to the Amended Complaint as Composite Exhibit "F" ("Financing Statements"), or by physical possession of such collateral.[6]

Second, Paragraph 6 states:

> Plaintiff [Riverside] holds a lien for the total sum superior to any claim or estate of Defendants, on the following described property in Brevard County, Florida: See Exhibit A.[7]

Exhibit A lists assets owned by the Debtor including real property, personal property, intangibles, and stock and a life insurance policy owned by the Debtor's principal. Exhibit A is identical to the exhibit attached to Riverside's UCC-1 filed in Florida. No party contested the Judgment. Riverside did not record a certified copy of the Judgment in the official records of Brevard County, Florida nor did it record the Judgment through a judgment lien certificate with the Florida Department of State.[8]

Riverside scheduled a foreclosure sale. The Debtor filed a Chapter 11 bankruptcy case on October 25, 2005 (the "Petition Date"), the eve of the scheduled foreclosure sale. The Debtor lists Riverside and HBBC as secured creditors in its Schedule D and describes Riverside as holding a "First mortgage; blanket lien" on the real estate and "All personal property of debtor."[9] The Debtor describes HBBC as holding a "Second mortgage; blanket lien" on the real estate and "All personal property of debtor."[10]

---

[6] *Id.* at p. 2, ¶ 1(e).
[7] *Id.* at p. 4, ¶ 6.
[8] *See* Florida Statutes §§ 55.10, 55.202, 55.203 (West 2005).
[9] Main Case Doc. No. 26.
[10] *Id.*.

4

Riverside asserts a claim in this bankruptcy case secured by all, or virtually all, real and personal property owned by the Debtor.[11] The Court entered the Order Granting Riverside National Bank of Florida's Verified Motion for Termination or Modification of Automatic Stay and to Prohibit or Condition Use of Cash Collateral on December 12, 2005.[12] Riverside and the Debtor, from the onset of this case, had been working together to structure a joint sale of the Debtor's assets in which Riverside would make a credit bid to purchase all of the Debtor's assets. They put the sale proceeds on a fast track with a sale to occur in early January 2006.

A hearing on the parties' joint motion to sell the Debtor's assets was held on December 15, 2005, during which counsel first informed the Court that an issue had arisen regarding the intended sale. The Debtor now challenges whether Riverside, on the Petition Date, held a perfected security interest in the Debtor's personal property because Riverside had not filed a UCC-1 in Alabama, where the Debtor was formed. Counsel for Riverside conceded in open court that Riverside had not properly perfected its security interest in some of the Debtor's personal property, including the Debtor's furniture, equipment, accounts receivable, and intangibles (the "Disputed Collateral"), due to the failure to file a UCC-1 in Alabama.[13] Riverside's counsel contended the entry of the Judgment cured Riverside's non-perfection issue and that, but for the judgment, Riverside would not have a perfected lien on the Disputed Collateral.[14] The parties do not dispute that Riverside holds a valid properly perfected security interest in the Debtor's real property and fixtures.[15]

---

[11] Adv. Pro. Doc. No. 3 (Defendant's Answer and Affirmative Defenses to Complaint) at p. 2.
[12] Main Case Doc. No. 54.
[13] Transcript of December 15, 2005 hearing at p. 10.
[14] *Id.* at p. 8 lines 2-5, p. 11 lines 20-24.
[15] *Id.* at p. 11, lines 2-17, p. 13 lines 15-6.

*The Adversary Proceeding*

The Debtor instituted an adversary proceeding seeking to avoid, pursuant to § 544 of the Bankruptcy Code. Riverside's security interest as well as the security interests asserted by HBBC, JRL, Altec, and Cook.[16] Each defendant asserts a security interest in the Debtor's assets.

Riverside responded to the Debtor's Complaint by filing: (i) Answer to Complaint and Affirmative Defenses[17]; (ii) Defendant's Motion for Summary Judgment on Adversary Complaint. Together with Request for Judicial Notice and Memorandum of Law in Support of Motion for Summary Judgment; (iii) Riverside National Bank's Supplement to Motion for Summary Judgment[18]; and (iv) Final Supplement to and Reinstatement of Legal Arguments in Support of Summary Judgment Motion and Against Relief Requested by Debtor (documents (ii) through (iv) are hereinafter referred to collectively as "Riverside's Summary Judgment Motion"). The Debtor filed its Plaintiff's Response to Bank's "Supplement"[19] and a competing Verified Motion for Summary Judgment.[20]

Riverside now retreats, in its pleadings, from its non-perfection concession. Riverside argues that it may have properly perfected its security interest in the Disputed Collateral by filing its UCC-1 in Florida pursuant to Florida Statutes §§ 679.3071 and 679.3011. The Debtor, citing these same statutes and Alabama state law, takes the opposite position arguing Riverside was required to file a UCC-1 in Alabama. The issue of whether a creditor asserting a security interest in the Debtor's asserts is required to file a financing statement in Alabama remains unclear for reasons set forth in more detail *supra*.

---

[16] Adv. Pro. Doc. No. 1. The Debtor also filed a Motion for Reconsideration requesting that the Court vacate the order terminating the automatic stay (Main Case Doc. No. 54).

[17] Adv. Pro. Doc. No. 3.

[18] Adv. Pro. Doc. No. 14. The full title of this pleading is: "Riverside National Bank's (A) Supplement to Motion for Summary Judgment, (B) Supplement to Memorandum of Law Supporting Summary Judgment Motion, (C) Response to Debtor's Memorandum of Law Regarding Summary Judgment, and (D) Statement of Intentions Regarding Bidding Procedures Motion."

[19] Adv. Pro. Doc. No. 16.

[20] Adv. Pro. Doc. No. 18.

These proceedings have moved rapidly for a number of reasons. The parties, with a common goal, pushed forward towards an intended January 2006 sale of the Debtor's assets, bringing matters before the Court on an expedited basis. The Court was initially led to believe that the perfection issue was a straightforward issue that could be quickly addressed. Riverside's lien status was first questioned on December 15, 2005. Counsel for Riverside asserted that the issue was a simple one and that no facts were in dispute.[21] The parties agreed at the December 15th hearing the lien issue would need to be resolved within the context of an adversary proceeding instituted by the Debtor and that a final hearing on such adversary proceeding would be conducted on December 28, 2005.[22] The Debtor then instituted this adversary proceeding on December 15, 2005.

The Debtor's creditors include persons who paid funds to the Debtor for boats to be constructed and their boats have not been built. These persons paid upwards of 50% of the boat purchase price to the Debtor pre-petition and never received their boats. An unsecured creditors' committee was formed on December 22, 2005 consisting mostly of persons who had boat construction contracts with the Debtor.

The parties do not dispute that the Debtor is a debtor in possession and has standing to assert the "strong arm powers" found in § 544 of the Bankruptcy Code.

### The Altec, Cook, JRL, and HBBC Defendants

Altec, Cook, JRL, and HBBC each assert security interests in some or all of the Debtor's assets. Their asserted security interests are junior to Riverside's security interest. HBBC provided some financing for the Debtor's purchase of the business. HBBC, on August 22, 2002,

---

[21] December 15, 2005 Transcript at p. 17 lines 19-25 (Riverside's counsel explains "For this, for this legal issue, it's so cut, it's so dry."). Riverside now admits that the perfection issue is not cut and dried. "It has recently become more apparent, although certainly not as clear in terms of published authorities, that the Bank did likely perfect its security interest in the Personal Property in a manner consistent with either Florida or Alabama law." Adv. Pro. Doc. No. 14 at p. 3.

[22] December 15, 2005 Transcript at pp. 30-2.

7

filed a UCC-1 in Brevard County, Florida asserting a blanket lien on all, or virtually all, of the Debtor's real and personal property. Altec, Cook, and JRL filed financing statements in Florida after August 22, 2002 asserting liens on some or all of the Debtor's assets. None of these four Defendants filed financing statements in Alabama. The financing statements filed by these Defendants were filed only in Florida.[23]

Each Defendant was properly served with the Complaint and Summons.[24] Altec, Cook, and HBBC filed answers to the Complaint.[25] JRL has neither filed a response to the Complaint nor made any appearance in this adversary proceeding. All Defendants were given notice of the hearing on Riverside's and the Debtor's motions for summary judgment. Altec filed a responsive motion for summary judgment contending that an overhead crane system utilized by the Debtor is Altec's property and not property of the estate.[26] The only parties present at the hearing on February 16, 2006 were the Debtor, Riverside, and Cook, through counsel. The Debtor and Altec have resolved the issues relating to the crane.[27] Any disposition relating to Altec will not be entered at this time. JRL, Cook, and HBBC hold unperfected security interests due to their failure to file financing statements in Alabama. Judgment is due to be entered against JRL, Cook, and HBBC.

## CONCLUSIONS OF LAW

Riverside contends the Judgment perfects its security interest in the Disputed Collateral—the furniture, equipment, account receivables, and intangibles. Riverside further contends that the *Rooker-Feldman* doctrine prevents the Court from revisiting the state court Judgment. The Debtor contends the Judgment is irrelevant because Riverside never perfected its

---

[23] *See* Adv. Pro. Doc. No. 1, Exhibits B-E.
[24] *See* Adv. Pro. Doc. Nos. 2, 4, 5, 6, and 7.
[25] Adv. Pro. Doc. Nos. 21 (Cook's Answer), 26 (Altec's Answer), and 28 (HBBC's Answer).
[26] Adv. Pro. Doc. Nos. 27, 29.
[27] Main Case Doc. No. 156 (Debtor's Motion for an Approval of Compromise of Controversy with Altec Capital Services, LLC).

security interest in the Disputed Collateral and, therefore, on the Petition Date its security interest was unperfected and avoidable pursuant to the Debtor's strong arm powers. The Debtor does not address the Judgment in its pleadings other than to state it "does not seek review of or relief from the Foreclosure Judgment" and "does not seek to avoid the Foreclosure Judgment."[28]

Riverside must establish that it held a perfected lien against all of the collateral on the Petition Date, sufficient to be superior (pursuant to applicable state law) to a hypothetical judicial lien held by the Debtor on the collateral, to prevail on its motion for summary judgment.[29]

### The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine is a doctrine of jurisdiction emanating from two Supreme Court cases decided nearly sixty years apart.[30]   The cases draw negative inferences from two federal statutes, 28 U.S.C. §§ 1257 and 1331,[31] barring "direct review in the lower federal courts of a decision reached by the highest state court, for such authority is vested solely in [the United States Supreme] Court."[32]   In other words, the doctrine bars federal courts "from sitting as appellate courts for state court judgments."[33]

The doctrine prohibits a federal court not only from reviewing a state court judgment, but also prohibits review of an issue deemed "inextricably intertwined" with the judgment. An issue is "inextricably intertwined" when: "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal

---

[28] Adv. Pro. Doc. No. 16 at p. 7.

[29] 11 U.S.C. § 544(a)(1).

[30] The cases are Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476-82, 103 S.Ct. 1303, 1311-15, 75 L.Ed.2d 206 (1983). The Supreme Court addressed the doctrine recently in Exxon Mobil v. Saudi Basic Indust., Corp., __ U.S. __, 125 S. Ct. 1517, 1521-22, 161 L.Ed.2d 454 (2005) explaining the doctrine " . . . is confined to cases . . . brought by state-court losers complaining of . . . state court judgments rendered before the [federal] proceedings commenced and inviting [federal court] review and rejection of those judgments. Rooker-Feldman does not otherwise . . . allow federal courts to stay or dismiss proceedings in deference to state court actions." See also Noel v. Hall, 341 F.3d 1148, 1155 (9th Cir. 2003) (explaining that the doctrine prevents a "party disappointed by a decision of a state court" from appeal to a federal district court.).

[31] In re Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074, 1078 (9th Cir. 2000) (en banc).

[32] ASARCO, Inc. v. Kadish, 490 U.S. 605, 622 (1989).

[33] In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005); In re Keller, 273 B.R. 416, 420 (D. Md. 2002) (explaining the doctrine bars federal district courts "from sitting in direct review of state court decisions.").

court must take an action that would negate the state court's judgment." Walker v. Horn. 385 F.3d 321. 330 (3d Cir. 2004).[34]    The Eleventh Circuit Court of Appeals defined the doctrine in Goodman v. Sipos. 259 F.3d 1327 (11th Cir. 2001):

> The Rooker-Feldman doctrine provides that federal courts. other than the United States Supreme Court. have no authority to review the final judgments of state courts.  The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are "inextricably intertwined" with a state court judgment.  A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.

Goodman. 259 F.3d at 1332 (citing Siegel v. LePore, 234 F.3d 1163. 1172 (11th Cir. 2000)).

The federal courts are not aligned in their interpretation and application of the *Rooker-Feldman* doctrine.[35]  Some courts have interpreted the doctrine as an absolute bar to review of state court adjudications.  Some courts. particularly through their definitions of "inextricably intertwined." recognize exceptions to the doctrine.  The Eleventh Circuit Court of Appeals recognized a due process exception to the doctrine in Wood v. Orange County, 715 F.2d 1543 (1983).  The plaintiffs challenged in federal court. on subject matter jurisdiction grounds. two liens for legal services that had been entered against them by Florida state courts.  The court determined that where a plaintiff had no "reasonable opportunity to raise his federal claim in state proceedings." the plaintiff's federal claim was not "inextricably intertwined" with the state court's judgment.[36]  The court found that the plaintiffs did not have a reasonable opportunity to raise their claims in the state court action and their allegations were. thus, not "inextricably intertwined" with the state court judgment.[37]

---

[34] *See also* Justice Marshall's concurrence in Penzoil Co. v. Texaco. 481 U.S. 1, 23 (1987) in which he explains "that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state-court judgment wrongly decided the issues before it."
[35] Jodi F. Manko, Comment at 594.
[36] Wood v. Orange County, 715 F.2d 1543. 1547 (11th Cir. 1983). cert denied, 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984).
[37] Id., 715 F.2d at 1543.

The Fourth Circuit and Sixth Circuit Courts of Appeals recognize an exception to the *Rooker-Feldman* doctrine when the state court judgment was procured through fraud, deception, accident, or mistake.[38] The Eighth Circuit has determined that the doctrine does not bar a suit in federal court brought by an individual who was not a party to the state court action.[39] The Seventh Circuit also finds exception to the doctrine when a federal statute specifically authorizes federal review of a final state court decision.[40]

The doctrine is not applicable where federal courts have explicitly been empowered to review state court adjudications. For example, federal courts have the right to review state court actions involving habeas corpus proceedings pursuant to 28 U.S.C. § 2241.

"Exceptions" to the *Rooker-Feldman* doctrine also exist within the Bankruptcy Code itself. Even though the doctrine bars a bankruptcy court from collaterally attacking a state court judgment, a bankruptcy court has the power to affect a state court judgment pursuant to a number of Code provisions. For example, state court judgments are routinely avoided pursuant to 11 U.S.C. §§ 544, 547, 548, and 549. State court judgments are modified pursuant to 11 U.S.C. §§ 1129 and 1325, and are discharged pursuant to 11 U.S.C. §§ 727, 1141, and 1328 of the Bankruptcy Code. A bankruptcy court may enter a money judgment in a nondischargeability proceeding where a state court had, pre-petition, liquidated the debt to judgment.[41] A bankruptcy court can also unwind a state court determination as to the applicability of the automatic stay. The Ninth Circuit Court of Appeals in In re Gruntz explained that "by virtue of the power vested

---

[38] *See* Sun Valley Foods Co. v. Detroit Marine Terminals, Inc. (In re Sun Valley Foods Co.), 801 F.2d 186, 189 (6th Cir. 1986); Resolute Ins. Co. v. North Carolina, 397 F2d 586, 589 (4th Cir. 1968).

[39] *See* Snider v. City of Excelsior Springs, Mo., 154 F.3d 809, 812 (8th Cir. 1998) (citing Johnson v. DeGrandy, 512 U.S. 997, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994)); see also United States v. Owens, 54 F.3d 271, 274 (6th Cir.), *cert. dismissed*, 516 U.S. 983, 116 S.Ct. 492, 133 L.Ed.2d 418 (1995).

[40] Young v. Murphy, 90 F.3d 1225, 1230 (7th Cir. 1996); 28 U.S.C. § 2241 (1999) (authorizing federal district courts to review state court decisions in habeas corpus proceedings). *See* In re Glass, 240 B.R. 782 (Bankr. M.D.Fla.1999) (holding exception did not apply to Chapter 13 debtor seeking sanctions when state court has specifically found that contempt proceedings were not subject to stay).

[41] In re Sasson, 424 F.3d 864, 870 (9th Cir. 2005) (explaining "The existence of a state court judgment does not deprive the bankruptcy court of the statutory power to enter a new judgment of nondischargeability.")

in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay."[42]

A bankruptcy court's ability to avoid, modify or alter a state court judgment pursuant to various Bankruptcy Code "exceptions" results from the "exercise of federal bankruptcy power."[43]  It seems untenable that the *Rooker-Feldman* doctrine and federal bankruptcy law can co-exist, yet they do.[44]

### The *Rooker-Feldman* Doctrine Bars Collateral Review of the Judgment

The Judgment is a non-appealable final order entered by a state court.  The parties had a reasonable opportunity to litigate any issues relating to Riverside's security interest and perfection of that security interest in the state court foreclosure proceeding.  It appears that all parties believed that Riverside held a properly perfected first priority security interest in all of the collateral and no one challenged the Judgment.  The *Rooker-Feldman* doctrine, as articulated by the Eleventh Circuit Court of Appeals in <u>Wood v. Orange County</u>, therefore, prevents this Court from acting in an appellate manner with regards to the Judgment.

If the state court erred in entering the Judgment, or if a party was dissatisfied with the Judgment, relief was available to the parties in the Florida appellate courts.  If the Judgment mistakenly reflects that Riverside's security interest was "perfected," the mistake must be remedied by the state court pursuant to state court rules of procedure, namely Florida Rule of

---

[42] In re Gruntz, 202 F.3d at 1083 (The court addressed a reverse *Rooker-Feldman* situation when the state court proceeded to prosecute, convict, and order incarceration of the debtor who had defaulted on his child support obligations. It held that the automatic stay did not apply to prevent the state court action pursuant to 11 U.S.C. § 362(b)(1) and that the debtor's remedy in challenging the state court conviction was a writ of habeas corpus.).

[43] In re Sasson, at 871 (holding that actions to determine whether a debt is dischargeable pursuant to §523 or §727 involve the exercise of a bankruptcy court's exclusive statutory power "and are not subject to the *Rooker-Feldman* doctrine.").

[44] The contradiction is recognized in only two cases found by this Court: the Third Circuit Court of Appeals in In re Knapper, 407 F.3d at 583-4, n. 22 and the Ninth Circuit Court of Appeals in In re Gruntz, 202 F.3d 1074, 1079 (9th Cir. 2000).

One writer attempts to explain this contradiction through reference to the Supremacy Clause found at U.S. CONST. art. VI, §2: "Bankruptcy-related issues are governed by federal law codified in title 11 of the United States Code.  The Supremacy Clause in the United States Constitution dictates that this body of federal law supercedes any conflicting state law." Jodi F. Manko, Comment, *Collateral Estoppel and the Rooker-Feldman Doctrine: The Problematic Effect These Preclusion and Jurisdictional Principles Have on Bankruptcy Law*, 21 Emory Bankr. Dev. J. 579, 583 (2004-2005).

Civil Procedure 1.540(b), which provides for relief from a judgment, decree, or order for where mistakes, inadvertence, excusable neglect, newly discovered evidence, or fraud may have occurred.[45]

Bankruptcy courts must step carefully when confronted with a state court order intermingled with a bankruptcy proceeding. There is a fine line between merely reading the plain language of a state court order and going behind the order to revisit matters already decided.[46]  The *Rooker-Feldman* doctrine does not allow the Court to go behind the plain language of the Judgment and dissect whether Paragraphs 1(e) and 6 of the Judgment mean Riverside's security interest was perfected by filing a financing statement only in Florida and not in Alabama.

The Judgment must stand pursuant to the *Rooker-Feldman* doctrine. The plain language of the Judgment sets forth that Riverside holds a perfected lien on all of the Debtor's assets listed in Exhibit A.[47]  Exhibit A covers all, or virtually all, of the Debtor's real and personal property, including the Disputed Collateral. Riverside, pursuant to the language of the Judgment, held a perfected lien on all of the collateral on the Petition Date.

## 11 U.S.C. § 544

The Debtor contends in its Complaint that Riverside's security interest in the Disputed Collateral is avoidable because it was unperfected on the Petition Date. Section 544 of the Bankruptcy Code, known as a "strong arm" provision, is designed to aid a trustee in recovering assets for the benefit of creditors of the estate. A Chapter 11 debtor-in-possession has standing

---

[45] Fla. R. Civ. P. 1.540(b) (2006).

[46] *See, e.g.*, In re Skorich, 322 B.R. 77 (Bankr. D. N.H. 2005) (court reviewed divorce decree issued by state court to determine its effect on the distribution of the bankruptcy estate in light of the Trustee's status as a hypothetical lien creditor pursuant to § 544(a) and applicable state law).

[47] "Plaintiff [Riverside] perfected the security interest reflected in the aforesaid Mortgage, Assignment, Security Agreement, Life Insurance Assignment and Hypothecation Agreement by filing a UCC-1 with the Florida Secretary of State on August 12, 2002, and by recording a UCC-1 on the Public Records of Brevard County, Florida, at OR Book 4655, Page 3440, copies of which are attached to the Amended Complaint as Composite Exhibit "F" ("Financing Statements"), or by physical possession of such collateral." Judgment at Paragraph 1(e).

to exercise the powers of § 544 pursuant to § 1107(a).[48] The term "trustee" found in § 544 is synonymous with the term "debtor-in-possession" pursuant to §1107(a) and the two terms shall be used interchangeably hereinafter.[49] "The purpose of the 'strong arm clause' is to cut off unperfected security interests, secret liens and undisclosed prepetition claims against the debtor's property as of the commencement of the case."[50]

A trustee, pursuant to § 544(a)(1), has the rights and powers to avoid any transfer or obligation of the debtor that is avoidable by a hypothetical creditor on a simple contract with a judicial lien on the property of the debtor unsatisfied as of the petition date. Section 544(a)(1) provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –
>> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

11 U.S.C. § 544(a)(1) (2005). On the petition date a trustee has the status of a creditor with a judicial lien on all property on which a creditor could have obtained a judicial lien, whether or not such creditor actually exists. "This hypothetical lien given to the trustee by §544 is inferior to any perfected lien existing at the time the petition is filed and is superior to any unperfected lien."[51] An unperfected lien remains valid until the trustee avoids it.[52]

---

[48] 11 U.S.C. §1107(a).
[49] 5 Collier on Bankruptcy ¶ 544.02, 544-4, n. 1 (15th Ed. Rev. 2005).
[50] 5 Collier on Bankruptcy ¶ 544.03, 544-8-7 (15th Ed. Rev. 2005).
[51] In re Collins, 234 B.R. 88, 90 (Bankr. W.D. Mo. 1999).
[52] In re Miller, 320 B.R. 203, 209 (Bankr. N.D. Ala. 2005).

A debtor-in-possession or trustee is often referred to as holding "hypothetical ideal lien creditor status" pursuant to § 544.[53]  The status conferred by § 544(a) upon the trustee or debtor-in-possession is that of "the ideal creditor, irreproachable and without notice, armed cap-a-pie with every right and power which is conferred by the law of the state upon its most favored creditor who has acquired a lien by legal or equitable proceedings."[54]  The trustee or debtor-in-possession is not required to comply with any state law notice requirements to perfect its rights as a hypothetical lien holder and holds such position regardless of whether it had knowledge of a security interest.[55]

Section 544 acts in tandem with state law.  Non-bankruptcy law gives "substantive flesh to the statutory bones" of § 544.[56]  The extent of the trustee's rights as a judicial lien creditor is measured by applicable substantive state law of the jurisdiction governing the property in question.[57]  Determining what state law governs can be difficult, particularly where the debtor's assets are spread throughout different states.  The majority view holds that when confronted with state law claims that do not involve federal policy issues, a bankruptcy court should apply the choice of law rules of the forum state.[58]  A threshold issue exists as to whether Florida or Alabama state law governs the scope of the debtor-in-possession's § 544 hypothetical lien rights.  The Debtor is an Alabama LLC and its assets are located in Florida.  A determination as to which state law governs is not necessary because the result pursuant to either Florida or Alabama law is the same.

---

[53] See In re Guillot, 250 B.R. 570, 591 (Bankr. M.D. La. 2000).
[54] In re Snelson, 330 B.R. 643, 648 (Bankr. E.D. Tenn. 2005) (quoting In re Waynesboro Motor Co., 60 F.2d 668, 669 (S.D. Miss. 1932)).
[55] 11 U.S.C. § 544(a) (2005).
[56] In re Guillot, 250 B.R. at 596.
[57] 5 Collier on Bankruptcy ¶ 544.02, 544-5 (15th Ed. Rev. 2005); In re Collins, 234 B.R. at 91, n.2; In re Richman, 181 B.R. 260, 264 (Bankr. D. Md. 1995).
[58] 5 Collier on Bankruptcy ¶ 544.02, 544-6 (15th Ed. Rev. 2005).

The substantive state law applicable to this adversary proceeding is the law governing secured transactions.    Both Florida and Alabama have codified laws governing secured transactions that were revised and made effective on January 1, 2002. The Permanent Editorial Board for the Uniform Commercial Code ("UCC"), with the support of the American Law Institute and the National Conference of Commissioners on Uniform State Laws, conducted a study of Article 9 of the UCC, which provided a comprehensive scheme for the regulation of secured transactions.[59] Article 9 was substantially revised as a result of the study.  The revisions include an expanded scope of Article 9, expanded duties of secured parties and new choice of law rules.[60]  Florida and Alabama adopted the revised Article 9 effective January 1, 2002.  The revised Article 9 was in force both in Florida and in Alabama at the time the Debtor and Riverside entered into the loan transaction.

The Debtor, as of the Petition Date, stands in the position of an ideal judgment lien creditor by virtue of § 544.  The extent of the Debtor's rights in that position are measured by substantive state law.    The state law statutes governing secured transactions in Florida are contained in The Florida Uniform Commercial Code found at Chapters 670 through 680 of the Florida Statutes.    Chapter 679 of the Florida Statutes (§§ 679.1011–679.709), which was substantively revised in 2002, governs secured transactions.

Section 544 of the Bankruptcy Code must be read in conjunction with Florida Statute § 679.3171 (as found in the revised Article 9) which sets forth the priority of security interests, if Florida law is the applicable substantive state law.  Section 679.3171(1)(b)(1) provides that an unperfected security interest is subordinate to the rights of a lien creditor.[61]  The Alabama

---

[59] Florida Statutes § 679.1011, UCC Comment nn. 1-3.

[60] *Id.* at n. 4.

[61] (1) A security interest or agricultural lien is subordinate to the rights of:
(b) Except as otherwise provided in subsection (5), a person who becomes a lien creditor before the earlier of the time:
1. The security interest or agricultural lien is perfected . . . .

Commercial Code contains a provision that is virtually identical to the Florida priority statute. Section 7-9A-317 of the Alabama Commercial Code provides that a security interest is subordinate to the rights of "a person that becomes a lien creditor before the earlier of the time the security interest or agricultural lien is perfected. . . ."[62]

A security interest that is unperfected on the Petition Date is subordinate to the rights of the Debtor, who holds a hypothetical judicial lien pursuant to § 544 of the Bankruptcy Code, regardless of whether Florida or Alabama substantive state law is applicable to this proceeding.

### Entry of the State Court Judgment

Riverside, the parties agree, held a security interest encumbering all of the collateral on the Petition Date. The parties agree that the assets in which Riverside's security interest was properly perfected, the real estate and fixtures, remained encumbered by its perfected lien. The parties disagree as to the status of Riverside's security interest in the Disputed Collateral on the Petition Date. The Debtor argues that the Disputed Collateral, while encumbered by a security interest, was not encumbered by a perfected lien on the Petition Date. Riverside argues that by virtue of the Judgment it holds a properly perfected security interest in all of the collateral, which is not subordinate to the Debtor's hypothetical judicial lien position.

The *Rooker-Feldman* doctrine requires that the plain language of the Judgment prevails and the Judgment must stand as written. This Court is bound by the constraints of the doctrine. The plain language sets forth that Riverside has a *perfected* security interest.[63] Therefore, on the Petition Date, Riverside held an interest in the collateral that was not subordinate to the Debtor's judicial lien rights created by § 544.[64] A hypothetical judgment lien arising through § 544 of the

---

Fla. Stat. 679.3171(1)(b)(1) (West 2003).

[62] Code of Ala. § 7-9A-317 (2005).

[63] Judgment at ¶ 1(e).

[64] Fla. Stat. § 679.3171(1)(b)1 (2003).

Bankruptcy Code does not trump a perfected security created pursuant to either Alabama or Florida law. Riverside's security interest in the collateral is, therefore, not avoidable pursuant to § 544(a).

### The Result Had the Judgment Not Been Entered

It is important to note that, were it not for the Judgment, Riverside would most likely hold an unperfected security interest in the collateral, which would be avoidable pursuant to § 544 and applicable state law. It appears from a reading of the relevant Florida and Alabama UCC security interest perfection statutes and choice of law rules, that Riverside was required to file a UCC-1 in Alabama in order to perfect its security interest in the Disputed Collateral. Florida Statute § 679.3071(5) and Alabama Statute § 7-9A-307(e) both provide that "a registered organization that is organized under the law of a State is located in that State." The Debtor, an Alabama limited liability company, is "located" in Alabama and Alabama law governs the perfection of a security interest.[65]   Alabama Statutes §§ 7-9A-310(a) and 709A-501 require that, in order to perfect a security interest in the Debtor's collateral, Riverside needed to file a financing statement in Alabama.

Riverside did not file a financing statement in Alabama and would have an unperfected security interest in the Disputed Collateral on the Petition Date, without the Judgment. The Debtor, by virtue of its hypothetical judicial lien position, could have avoided Riverside's unperfected security interest pursuant to § 544(a) and applicable state law. The trustee, in the position of a judgment lien creditor, will defeat any claimed security interest not properly perfected under applicable state law.[66]  The failure to properly file a financing statement to

[65] Riverside relies upon Florida Statute § 679.3011(2) for its position that Riverside could file its UCC-1 in either Florida or Alabama in order to be properly perfected. It appears that Riverside's reliance on this statute is misplaced because it governs *possessory* security interests. Riverside holds a *nonpossessory* security interest.
[66] In re Kenco Consol., Inc., 153 B.R. 348, 350 (Bankr. M.D. Fla. 1993) (allowing avoidance of creditor's lien by trustee where creditor failed to properly perfect its security interest in the debtor's inventory and accounts); In re Mott Signs, Inc., 110 B.R.

18

perfect a security interest does not invalidate the security interest, but § 544 grants a debtor-in-possession a superior position to that unperfected security interest.[67] The superior position exists even if the debtor-in-possession had actual knowledge of the security interest.[68]

The result may also be different had the Debtor brought a § 547 preference avoidance action. If the Judgment "perfected" an otherwise unperfected lien in the Disputed Collateral within the ninety-day prepetition period, the perfection could potentially be subject to avoidance pursuant to 11 U.S.C. § 547(b).

### Conclusion

The purpose of § 544 of the Bankruptcy Court is to allow the trustee or debtor in possession to marshal assets of the estate for distribution to the estate's creditors. A trustee or debtor in possession holding the rights of a judicial lien holder can utilize those rights to avoid unperfected security interests and liquidate the estate's assets for the benefit of the creditors. This case presents a classic § 544 strong-arm avoidance scenario. Riverside would hold an unperfected security interest that the Debtor could avoid pursuant to § 544, were it not for the state court Judgment. The Debtor could then sell all of the assets to the highest bidder and the creditors of this estate would receive payment, or partial payment, of their claims. The *Rooker-Feldman* doctrine prevents a collateral attack of the Judgment and it must be allowed to stand as written.

JRL, HBBC, and Cook failed to file financing statements in Alabama and, therefore, their asserted security interests are unperfected. Such security interests are avoidable pursuant to 11 U.S.C. § 544.

---

568, 570 (Bankr. N.D. Fla. 1989) (holding that debtor in possession's position pursuant to § 544 prevailed over security interest of creditor who failed to file its financing statement for equipment in the proper location and was, thus, unperfected).
[67] In re Advanced Aviation, Inc., 101 B.R. 310, 312-3 (Bankr. M.D. Fla. 1989).
[68] 11 U.S.C. § 544(a).

Based upon the foregoing, Riverside's Motion for Summary Judgment shall be granted and the Debtor's Verified Motion for Summary Judgment shall be denied in part and granted in part.  The Debtor's Verified Motion for Summary Judgment shall be denied as to the relief requested regarding Riverside and granted as to the relief requested against JRL, HBBC, and Cook.  The relief requested in the Debtor's Complaint shall be granted as to JRL, HBBC, and Cook and denied as to Riverside.  The collateral, including the Disputed Collateral, is subject to a perfected security interest held by Riverside, which 11 U.S.C. § 544 does not affect.

Accordingly, judgment will be entered in favor of Riverside and against JRL, HBBC, and Cook.  Any disposition regarding the Defendant Altec will not be entered at this time.

The Court shall enter a separate judgment consistent with these Findings of Fact and Conclusions of Law.

Dated this 1st day of March, 2006.

ARTHUR B. BRISKMAN
United States Bankruptcy Court